LEMMON, Judge.
This is an appeal from an adjudication of delinquency based on defendant’s violation of R.S. 14:64 (armed robbery). The principal issue is whether the state’s proof, consisting solely of identification by the victim, established defendant’s guilt beyond a reasonable doubt. R.S. 13:1579.1; In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
I
The victim, Lloyd Williams, a taxicab driver, testified: He picked up six passengers at Freret Street and Washington Avenue in New Orleans at about 1:00 a. m. on April 25, 1978. When they reached their destination (1700 block of Leonidas Street), one passenger asked for change for a $20.00 bill. He replied that the change was in the trunk, and a back-seat passenger (later identified by him as defendant) pulled a gun, while the passenger next to him held him to keep him from getting out of the car and took his keys. Defendant got out of the car on his side and put the gun in his face. He then got out of the car and sat on the ground, and while defendant stood by the “other door”, the others took the money out of the trunk. After he had been sitting on the ground for five or six minutes, defendant told him to run, and as he ran he was shot in the back.
The only time Williams looked straight into defendant’s face was when he was sitting in the cab with defendant outside, pointing the gun in his face for about three to five minutes. There was no light on in the cab, and the record does not reveal whether or not there was moonlight that evening or any artificial lighting in the area.
Insofar as this record shows, the only description reported to the police on the night of the crime was that the gunman was 5 feet, 11 inches tall, weighed 150 to 155 pounds, had his hair plaited, and was wearing a khaki cap, khaki pants and a white T-shirt.
The next afternoon (April 26) Williams was driving a passenger in the vicinity of Leonidas and Green Streets (in the general area where he had discharged the passenger on the night of the crime), when he saw defendant on a “white lady’s porch” wearing white pants and a rust-colored shirt. He called the police on his radio. About 10 or 15 minutes later the police came and arrested defendant as he was walking down the street near his house, around the corner from the place Williams had seen him on the porch. Williams saw the police arrest defendant and put him in the police car, and he verified to one of the officers standing with him “on the other corner" that he was certain this was the person who robbed him.
Just prior to the trial (two months after the crime), Williams again identified defendant by picking him out from seven photographs spread out on a table. Then at the hearing Williams identified defendant a third time, stating he had no doubt because “(a)nytime you are looking at someone, begging them not to shoot you and the one next to you is saying shoot him in the head, no . I’ll never forget that face”.
Defendant, who is 5 feet, 7 inches tall, testified that he went to bed at 10:30 p. m. on the night of the crime and slept until 7:00 a. m. the next morning, when he got up and went to school. His mother and two brothers corroborated his alibi, one brother stating he had stayed up studying for a college examination until after 1:30 a. m.
Defendant had never before been arrested or charged with a crime, and the parties stipulated he had the reputation of being a law-abiding citizen.
Defendant’s classmate testified that he had seen a person named Herbert Simms, *494 alias Poncho, on the córner of Green and Leonidas at about 12:30 a. m. on the night of the crime; that Poncho told him he was going “to hit a real hustle”, meaning to make money by robbery; that the next morning Poncho told him he had robbed a taxi driver and shot him in the side; and that Miss Boles, the girl Poncho was living with on Willow Street, had put him out when he wouldn’t turn himself in and had called the police.
One of the investigating policemen testified they had received information that Simms had committed the crime, but were unable to locate him. Simms’ photograph was included among those shown to Williams, who denied he had ever seen any of the persons in the photographs other than defendant.
II
The presumption of innocence is an elementary principle of due process based on the maxim that a person should not be punished for the commission of a crime when there is reasonable doubt about his guilt. This presumption represents a fundamental social evaluation as to the result of erroneous factual determinations, namely, that there should be a lesser risk that an innocent person will be erroneously convicted, even if there is a greater risk that a guilty person will be erroneously acquitted.
The reasonable doubt issue in this case turns on the reliability of Williams’ identification and particularly of the initial identification (on the day after the crime), since the later identifications (from photographs two days before trial and by personal confrontation at trial) were merely affirmations that this was the person identified out of court on the day of the arrest.
Numerous considerations are involved in the determination of the reliability of an identification. Elemental facts include the circumstances surrounding the witness’ opportunity to view the perpetrator at the time of the crime, including the witness’ degree of attention; the type and accuracy of the description given by the witness to the police after the crime; the degree of certainty by the witness at the confrontation; and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1975).
In the present case the victim recognized defendant as the perpetrator on the day after the crime, and the victim positively identified defendant when the police arrested him minutes after the recognition. Although the circumstances surrounding Williams’ observation of the perpetrator were not highly favorable because of the darkness, the three to five-minute period of face-to-face observation was certainly more than a fleeting glance. On the other hand, the difficulty of observation in darkness and the discrepancy in the estimate of defendant’s height are negative factors. However, these are not so substantial as to make the testimony unbelievable, but merely go to the weight of the testimony and constitute matter for proper argument to the trier of fact.
Moreover, identification by a single witness may support a conviction despite considerable alibi testimony. Also particularly notable in this case is defendant’s failure, after presenting evidence that Poncho had boasted of committing the crime, to produce the high school counselor, who conveyed this information to the assistant district attorney, and to produce Miss Boles, who supposedly urged Poncho to turn himself in when she learned defendant had been arrested for the crime.
We conclude that the evidence in this record supports the fact finder’s conclusion beyond a reasonable doubt that Williams’ identification was accurate.
AFFIRMED.